UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| ERWIN EDWARD EISERMAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 14-444-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CONSOL OF KENTUCKY, INC., et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Consol of Kentucky, Inc.'s motion for summary judgment. [Record No. 122] Because Kentucky's *caveat emptor* doctrine exempts Consol of Kentucky, Inc. ("Consol") from liability for the plaintiffs' alleged injuries, its motion for summary judgment will be granted.

**I.**

On July 29, 2013, Plaintiff Erwin Eiserman, acting within the scope of his employment with the Kentucky State Police, was a passenger in a helicopter operated by Defendant Andrew Croddy, an agent of the United States Drug Enforcement Agency. [Record Nos. 66, 79, and 84] The helicopter crashed, injuring Eiserman, when it made contact with a utility wire in a remote area of Breathitt County, Kentucky. [Record Nos. 79, 122-1, and 133] Eiserman filed a Complaint in Breathitt Circuit Court, seeking compensatory and punitive damages arising from the actions of several parties, including Consol. [Record No. 1-1] Croddy then removed the case to this Court. [Record No. 1] In his most recent Amended Complaint, Eiserman claims that Consol was negligent and/or

grossly negligent for failing to mark the utility line; failing to report the utility line's location to the Federal Aviation Administration; and failing to inspect, maintain, or remove the utility line.[1] [Record No. 79] Eiserman's wife, Barbara Eiserman, also requests compensatory and punitive damages for the loss of consortium.[2] *Id.*

The parties do not dispute that Sierra Coal originally constructed the utility line in issue. [Record Nos. 133 and 122-1] The line provided electricity to Sierra's coal operations in the surrounding area. *Id.* In the mid-1980s, Consol purchased all of Sierra's mining assets, including its rights to the property and the utility line at issue. *Id.* The parties also agree that Consol sold all of its mining assets, including the utility line, to Kentucky Fuel Corporation ("KFC") in March of 2010. *Id.*

## II.

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Chao v. Hall Holding Co.*, 285 F.3d 415, 424

---

[1] In its Third Party Complaint, Consol brought claims against Andrew Croddy for apportionment and contribution. [Record No. 1-1, pp. 5-10] The United States later substituted itself for Croddy [Record No. 11] and filed a counterclaim against Consol, alleging that Consol's negligence caused injury to Croddy. [Record No. 16] The United States seeks reimbursement for the worker's compensation expenses it paid to Croddy. *Id.* All of the arguments made by the United States in its response to Consol's summary judgment motion mirror those made by the plaintiffs in their response. [Record No. 135] For the sake of simplification, this opinion will refer to all arguments against the motion as the plaintiffs' arguments.

[2] Erwin and Barbara Eiserman also brought claims for loss of consortium on behalf of their two minor children. [Record No. 79] However, the Court dismissed those claims based on the plaintiffs' stipulation that they were barred by Kentucky law. [Record Nos. 152 and 153]

(6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  *See Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).  In deciding whether to grant a motion for summary judgment, the Court must view all the facts and draw all inferences from the evidence in a light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

Consol argues that it is not liable because it had not owned the utility line in question for over three years at the time of the accident.  [Record No. 122-1]  The plaintiffs counter that Consol is liable regardless because it failed to design, construct, inspect, maintain, and/or remove the line from service while it did have possession.  [Record No. 133]

Kentucky generally adheres to the doctrine of *caveat emptor* (or "buyer beware").  In other words, "real estate is sold in an 'as is' condition, . . . and the purchaser takes the property subject to the existing condition."  *Ferguson v. Cussins*, 713 S.W.2d 5, 6 (Ky. Ct. App. 1986).  *See Fannon v. Carden*, 240 S.W.2d 101, 103 (Ky. 1951) ("As a general rule where no direct representation is made by the vendor concerning definite facts and the purchaser has sufficient opportunity to observe the condition of the premises, the maxim of caveat emptor is applicable. . . .").  Section 352 of the Restatement Second of Torts states the general principle as follows:

> Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.

Restatement (Second) of Torts § 352 (1965).

However, some exceptions to the *caveat emptor* rule exist, including the situation "where the defective condition is inherently nonobservable." *Ferguson*, 713 S.W.2d at 6. The Restatement Second also recognizes this exception:

> (1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if
>
> > (a) the vendee does not know or have reason to know of the condition or the risk involved, and
> >
> > (b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

Restatement (Second) of Torts § 353 (1965).  In *Wilson v. Southland Optical Co.*, 774 S.W.2d 447, 448-49 (Ky. Ct. App. 1988), the Kentucky Court of Appeals recognized that sections 352 and 353 of the Restatement Second are consistent with Kentucky's application of the *caveat emptor* doctrine.

Under section 352 of the Restatement, the *caveat emptor* rule generally bars Eiserman from recovering against Consol for the injuries he sustained on property that Consol no longer possessed.  The plaintiffs argue that Consol is still responsible because the utility line created an "unreasonable risk to persons on the land."  [Record No. 133]  Regardless of whether the utility line posed an unreasonable risk of harm, section 353's exception does not apply because KFC, the actual possessor, had reason to know that the utility line existed. While the parties dispute whether the utility line was visible from a helicopter in the air, no one disputes that the utility line and the poles that supported the line were visible from the ground.

- 4 -

According to the plaintiffs, KFC's corporate representative testified during his deposition that Consol did not tell KFC about the utility line.  [Record No. 133, p. 13]  Because the line ran to a coal processing plant that was no longer in operation, KFC did not inspect the line prior to taking possession.  *Id.*  However, the corporate representative also admitted that Consol made all of their property and records available to KFC prior to the sale.  *Id.*  Additionally, in Consol's and KFC's Asset Purchase Agreement, KFC certified that it had conducted due diligence concerning the assets before closing.  [Record No. 122-2, p. 20]

Section 353 protects buyers from "nonobservable" or latent defects on the land, not defects that the buyer should reasonably know exist.  "The very definition of a latent defect is a defect that a reasonably careful inspection would not reveal or is a hidden defect." *Taylor v. Sander*, No. 2003-CA-002220-MR, 2004 WL 2417312, at *1 (Ky. Ct. App. Oct. 29, 2004) (citing Black's Law Dictionary 1026 (Revised 4th ed. 1968)).  Proof that KFC did not know about the utility line is insufficient.  For the exception to apply, the plaintiffs must offer some proof that KFC had no reason to know that the utility line existed.  Construing all of the evidence in the plaintiffs' favor, the undersigned agrees with Consol on this point. KFC was a sophisticated buyer and was given adequate opportunity to inspect the land.  In fact, the Asset Purchase Agreement contemplated that KFC would do so.  Any reasonably careful inspection would have revealed an above-ground utility line.  Based on §§ 352 and 353 of the Restatement, no reasonable jury would return a verdict in the plaintiffs' favor against Consol under the undisputed facts presented.

Alternatively, the plaintiffs argue that Consol is still liable under section 373 of the Restatement Second of Torts.  [Record No. 133, pp. 9-10]  The plaintiffs concede that the

Supreme Court of Kentucky has not considered or adopted this section of the Restatement. *Id.* at 10.  Nevertheless, they argue that, "there is no reason to believe that [the Kentucky Supreme Court] would not [adopt section 373] if given the chance."  *Id.*  The Court need not guess what Kentucky's highest court would do if confronted with this question because section 373 is inapplicable here.  Section 373 assigns liability to vendors of land who create artificial conditions on the land that pose "an unreasonable risk of harm to others *outside the land*. . . ."  Restatement (Second) of Torts § 373 (1965) (emphasis added).  While sections 352 and 353 address liability for injuries that occur upon the land, the comments to section 352 refer the reader to section 373 for harm to "persons outside of the land."  Restatement (Second) of Torts § 352 cmt. a (1965).  The comments to section 373 provide the following illustration:

> The A Telegraph Company under a license from B, the owner of a building, erects its poles and wires upon the roof of B's building. The manner in which they are erected creates a risk that the wires, which are intended to carry high voltage electricity, will come into contact with the telephone wires of another company so as to charge these wires with electricity highly dangerous to the users of the telephones. . . .

Restatement (Second) of Torts § 373 cmt. b (1965).

If A's wiring configuration causes D to receive a shock while making a phone call from D's home, the illustration explains that A may be liable under section 373.  *Id.*  On the other hand, sections 352 and 353 would apply if the injury occurred on B's property where A created the condition.  Here, Eiserman claims that he was injured when the helicopter made contact with KFC's utility pole.[3]  None of the parties contend that the utility pole caused

---

[3]   Since the United States alleges that Croddy's injuries resulted from the helicopter's collision with the utility pole, section 373 also does not shield the United States' claims against Consol from summary judgment.

injury to "others outside the land."  Thus, sections 352 and 353, but not section 373, apply to this case. [4]

## IV.

Because none of the material facts are genuinely in dispute and Consol is entitled to judgment as a matter of law, it is hereby

**ORDERED** as follows:

1.      Defendant Consol of Kentucky, Inc.'s motion for summary judgment [Record No. 122] is **GRANTED**.

2.      All claims asserted by the plaintiffs and by the United States against Defendant Consol of Kentucky, Inc., are **DISMISSED**, with prejudice, with the parties to bear their own costs and expenses.

This 14th day of April, 2016.



Signed By:

*Danny C. Reeves*

United States District Judge

---

[4]      For the same reason, Consol is incorrect that section 366 of the Restatement Second applies to this case.  The Supreme Court of Kentucky has adopted section 366.  *See Mason v. City of Mt. Sterling*, 122 S.W.3d 500, 509 (Ky. 2003).  However, section 366 only applies where an artificial condition is "unreasonably dangerous to persons or property *outside of the land*." Restatement (Second) of Torts § 366 (1965) (emphasis added).