UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| ERWIN EDWARD EISERMAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 14-444-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KENTUCKY FUEL CORPORATION, et al., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of Kentucky Power Company's motion for summary judgment. [Record No. 147] Because Kentucky Power Company ("the power company") had no duty to discover, repair, or report the allegedly hazardous condition at issue, summary judgment is appropriate.

**I.**

On July 29, 2013, Plaintiff Erwin Eiserman, while acting within the scope of his employment with the Kentucky State Police, was a passenger in a helicopter operated by Defendant Andrew Croddy, an agent of the United States Drug Enforcement Agency. [Record Nos. 66, 79, and 84] The helicopter crashed when it made contact with a utility line in a remote area of Breathitt County, Kentucky. [Record Nos. 79 and 147-1] Eiserman was injured in the accident.

The parties generally agree that, at the time of the accident, Defendant Kentucky Fuel Corporation ("KFC") owned the utility line which had been constructed by one of KFC's predecessors to carry power to mining operations in the area. And even though the power

company maintains that it has never owned the line, it admits that it supplied power to the line in the past. [Record No. 147-1]  At the time of the accident, power had been cut off to that entire segment of the line.  In fact, the parties agree that the helicopter hit a steel cable called a static line that was not charged with electricity.  The three lines that once ran parallel to the static line and carried the actual electrical current had fallen to the ground at some point before the accident.

On July 17, 2014, Eiserman filed a Complaint in Breathitt Circuit Court, requesting compensatory and punitive damages as a result of the conduct of several parties, including Kentucky Power Company.[1]  [Record No. 1-1, pp. 11-20]  Through a Third Party Complaint, the power company brought claims against Croddy for apportionment and contribution based on his alleged negligence in operating the helicopter.  *Id.* at 5-10.  After Croddy removed the matter to this Court, the United States substituted itself for Croddy.  [Record Nos. 1 and 11] The United States then filed a counterclaim against the power company, alleging negligence and seeking reimbursement for the worker's compensation expenses paid to Croddy. [Record No. 16]  In their most recently amended Complaint, Eiserman and his wife added the United States as a defendant.  [Record No. 79]  The plaintiffs' claims against the power company have now been dismissed, as settled.  [Record No. 144]  However, Kentucky Power Company seeks summary judgment on the United States' remaining counterclaim.  [Record No. 147-1]

---

[1]  Eiserman's wife, Barbara Eiserman, seeks to recover compensatory and punitive damages resulting from the loss of her husband's consortium. [Record Nos. 1-1 and 79] Additionally, the Eisermans brought loss of consortium claims on behalf of their two minor children.  *Id.*  However, the Court dismissed the children's claims after the plaintiffs stipulated that they were barred under Kentucky law. [Record Nos. 152 and 153]

## II.

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). *See Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008). In deciding whether to grant a motion for summary judgment, the Court must view all the facts and draw all inferences from the evidence in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

Kentucky Power Company claims that it is entitled to summary judgment because it had no duty to inspect or maintain a utility line that it did not own. [Record No. 147-1] "To recover under a claim of negligence in Kentucky, a plaintiff must establish that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached its duty, and (3) the breach proximately caused the plaintiff's damages." *Lee v. Farmer's Rural Elective Coop. Corp.*, 245 S.W.3d 209, 211-12 (Ky. Ct. App. 2007) (citing *Mullins v. Commonwealth Life Ins. Co.,* 839 S.W.2d 245, 247 (Ky.1992)). In *Louisville Gas & Electric Co. v. Johnson*, 282 S.W.2d 138, 139 (Ky. 1955), Kentucky's highest court held that an electric utility cannot be held liable for negligence "in the absence of a showing of ownership or a duty to inspect and maintain an electric system."

The United States argues that *Johnson* is not controlling and that the power company owed a duty to Croddy under Kentucky's universal duty of care. [Record No. 150] The United States observes that *Johnson* was decided 61 years ago. *Id.* at 4. Thus, the government contends that it "is of little help in analyzing the matter at hand." *Id.* Further, the United States urges the Court to give greater weight to more recent precedent like the Sixth Circuit's decision in *James v. Meow Media, Inc.*, 300 F.3d 683 (6th Cir. 2002), and the Court of Appeals of Kentucky's decision in *Lee*, 245 S.W.3d 209. *Id.*

Notwithstanding the government's contentions, *Johnson* is still controlling. The Kentucky Court of Appeals relied on it in a case decided in 2000. *Lambert v. Franklin Real Estate Co.*, 37 S.W.3d 770, 775 (Ky. Ct. App. 2000) ("'In the absence of a showing of ownership or a duty to inspect and maintain an electric system, an electric light company can not [sic] be held liable for injuries occasioned by negligent maintenance of the system.'" (quoting *Johnson*, 282 S.W.2d at 139)). Moreover, neither *James* nor *Lee* undermine *Johnson*'s applicability to the facts of this case. In *Johnson*, 282 S.W.2d at 139, a young boy was injured while playing near electric lines at Ormsby Village, a home for orphaned and underprivileged children. The defendant utility company constructed Ormsby's electric system, and Ormsby occasionally paid the utility company to repair the system. *Id.* at 139-40. But Ormsby also hired other electrical contractors to make repairs. *Id.* at 140. Beyond the meter used to determine the amount of electricity used, the court found that the electric system was under Ormsby's exclusive control. *Id.* As a result, the utility company was not liable for the boy's injuries. *Id.* The fact that the utility company provided the electricity flowing through the system "places no duty upon the company to inspect and maintain the lines in every private residence or commercial enterprise served by it." *Id.*

Here, even fewer facts connect Kentucky Power Company to the utility line in question. The power company's corporate representative offered deposition testimony that the power company did not design, construct, or maintain the utility line. [Record No. 147-2, p. 8] The United States does not dispute this assertion. Although the power company once supplied electricity to the line, that fact is not dispositive under *Johnson*. Additionally, the static line that caused the collision was not even charged with electricity.

Further, the holding in *Lee*, 245 S.W.3d 209, does not diminish *Johnson*'s effect. In *Lee*, a plane crashed into an unmarked utility line stretched over a recreational lake. The appellate court found that the defendant utility company had a duty to mark the line so that it would be visible to air traffic. *Id.* at 218. While the utility company in *Lee* questioned its duty to mark the line, it did not question its duty to maintain or inspect the line. That issue is not discussed in *Lee*. *Lee* is hardly dispositive when compared to the facts in this case, where KFC (not the power company) owned and controlled the static line involved in the accident.

Likewise, Kentucky's "universal duty of care" doctrine as enunciated in *James* does not overrule *Johnson*'s narrower holding. In *James*, 300 F.3d at 690, the Sixth Circuit explained that, under Kentucky's universal duty of care doctrine, "'every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury.'" (quoting *Grayson Fraternal Order of Eagles v. Claywell*, 736 S.W.2d 328, 332 (Ky. 1987), *superseded by statute*, Ky. Rev. Stat. § 413.241). However, the *James* Court emphasized that even the "universal duty of care" is "circumstantially limited: the duty is to exercise ordinary care to prevent *foreseeable* harm." *Id.* In Kentucky, the issue of

foreseeability is a "pure question of law" *Lee*, 245 S.W.3d at 217, and is an appropriate issue for this Court to resolve at the summary judgment stage.

The United States contends that the accident was foreseeable because power company employees should have noticed the static line when inspecting and repairing their own lines located nearby. [Record No. 150] For this theory, the government relies primarily on the expert report of Brad Shepherd, an electrical engineer retained by the plaintiffs. *Id.* Shepherd claims that when the electrified lines that once ran parallel to the static line fell, they must have fallen on lower adjacent lines owned by the power company. [Record No. 147-4, p. 7] Shepherd hypothesizes that the fallen lines must have caused an electrical fault in the power company's lines but admits that he has no record of such an occurrence. *Id.* According to Shepherd's report, when the power company investigated the hypothetical electrical fault, "it is most likely that [the power company] discovered the fallen conductors lying across the lines." *Id.* Regardless of where the fallen lines made contact with the power company's lines, Shepherd states that the hypothetical fault should have "triggered a more serious and thorough [] inspection [by the power company] of the entire abandoned [KFC] line including all crossings of [the power company's] facilities . . . ." *Id.* In other words, Shepherd asserts that if and when the power company observed a problem with an electrical line that it did not own or service, it had a duty to inspect the entire line which stretched between two mountain tops.

It is well-settled that a non-movant cannot avoid summary judgment by relying on mere speculation or conjecture. *Lewis v. Phillip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) ("[T]o survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than

mere speculation, conjecture, or fantasy." (internal quotation marks, brackets, and citation omitted)); *O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky. 2006) ("[S]peculation and supposition are insufficient to justify a submission of a case to the jury. . . ." (citation omitted)). Here, the United States premises its entire case against the power company Shepherd's speculations. While the Court must consider all the evidence in a light most favor to the non-movant, *Matsushita*, 475 U.S. at 587, the United States offers no evidence to support Shepherd's theories. Shepherd speculates but has not proven: (1) that KFC's electrical lines fell on the power company's lines; (2) that the fallen lines caused an electrical fault in the power company's system; (3) that the power company's employees went to inspect the power lines because of the fault; and (4) that during their inspection, those employees discovered that KFC's utility line posed a danger to air traffic.[2]

Even if the evidence indicated that the power company knew that KFC's utility line was in a dangerous condition, the United States has not proven that the power company had a duty to repair the utility line or report the condition to KFC. In *James v. Wilson*, 95 S.W.3d 875, 891 (Ky. Ct. App. 2002), the Kentucky Court of Appeals explained that the universal duty of care doctrine does not create a "theory of liability or cause of action where none previously existed and legal authority is otherwise lacking." Relying on section 314 of the Restatement Second of Torts, the Court held that "absent a special relationship, there is no duty to warn another of a potentially criminal act of a third person." *Id.* at 890. The same

---

[2]   Shepherd does note in his report that three days before the helicopter crashed, the power company's records show that a power company employee made repairs near the crash site. But Shepherd again draws unsupported conclusions from that fact. [Record No. 147-4, p. 8] He states, "[t]o reach this repair, the [power company] crew would have had to drive near or even under the abandoned and deteriorated [KFC] power line. They should have been able to see the line and, as experienced electric utility workers, they would have recognized the danger." *Id.*

concept applies to this case. Restatement section 314 states, "[t]he fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." Restatement (Second) of Torts § 314 (1965). Section 314A contains a list of special relationships giving rise to a duty to aid or protect. Restatement (Second) of Torts § 314A (1965). None apply here.

The United States argues that National Electrical Safety Code ("NESC") handbook places a duty on the power company to report or repair any issues. And Kentucky has adopted the NESC as a standard with which public utilities must comply. However, even the statute adopting the NESC indicates that the code only applies to a public utility's construction and maintenance of its own plant and facilities. Ky. Rev. Stat. § 278.042(2) (". . . the commission shall . . . ensure that each electric utility constructs and maintains *its plant and facilities* in accordance with . . . the most recent edition of the NESC." (emphasis added)). The power company also has provided relevant provisions of the NESC that expressly limit a utility's duties to inspection and maintenance of the utility's *own* system. [Record No. 147-6] For example, section 012 of the NESC states that, "a utility that serves another public or private utility with bulk power or other service has no duty for ensuring compliance of the other utility with NESC requirements." *Id.* at 3. Section 013A states,

> Nothing in the language of Rule 013B3 is intended to require one utility to inspect another utility's facilities under the normal inspection rules (unless by agreement another utility assumes that responsibility). In other words, while working at the site, workers should inspect the facilities on that structure for obvious problems that may adversely affect the safety of their own installation. . . . *If problems are found, they should be repaired or reported and scheduled for repair by the appropriate personnel.*
>
> There is also no requirement under Rule 013B3 to inspect the neighboring structures. . . .

*Id.* at 4 (emphasis added).

Disregarding the remainder of section 013A, the United States relies upon the single sentence italicized above. [Record No. 150, p. 5] However, it does not create a duty for two reasons. First, as discussed earlier, the United States has failed to produce any proof that the power company did find a problem with the utility line. Second, even if this single sentence does create a reporting duty (and the Court questions whether it does given the surrounding language and the Kentucky statute implementing the NESC), the United States' claim of negligence would still fail for lack of causation. As the power company states in its Reply, "downed lines do not cause air crashes. Even if [KFC] lines caused outages in [the power company's] lines, whatever danger was present, it was present on the ground, not in the air." [Record No. 154, p. 12] In other words, reporting fallen electric lines would not have prevented the helicopter from striking a static, non-electrified line that had obviously not fallen at the time of the accident.

### IV.

The United States has not produced sufficient evidence to establish the duty or causation elements of a tort claim. As a result, Kentucky Power Company is entitled to judgment as a matter of law. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Kentucky Power Company's motion for summary judgment [Record No. 147] is **GRANTED**.

2. All claims asserted against Defendant Kentucky Power Company are **DISMISSED**, with prejudice, with each party to bear its costs and expenses.

This 18th day of April, 2016.

Signed By:
*Danny C. Reeves* DCR
United States District Judge