UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| ERWIN EDWARD EISERMAN, et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 5: 14-444-DCR |
| ) | |
| V. ) | |
| ) | |
| KENTUCKY FUEL CORPORATION, ) | **MEMORANDUM OPINION** |
| et al., ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of the United States' motion to limit the opinion testimony of three proposed expert witnesses. [Record No. 124] Because its objections to two of the proposed experts are now moot, the United States' motion will be denied in part. However, the motion will be granted insofar as it seeks to limit the testimony of the third proposed expert, Clyde Pittman.

**I.**

On July 29, 2013, Plaintiff Erwin Eiserman, acting in the scope of his employment with the Kentucky State Police, was a passenger in a helicopter operated by Andrew Croddy, an agent of the United States Drug Enforcement Agency. [Record Nos. 66, 79, and 84] The helicopter crashed when it made contact with a utility wire in a remote area of Breathitt County, Kentucky. [Record Nos. 79 and 147-1] Eiserman and Croddy sustained serious injuries from the crash.

Eiserman and his wife filed a Complaint in Breathitt Circuit Court, seeking compensatory and punitive damages from Kentucky Power Company ("the power

company"), Consol of Kentucky, Inc. ("Consol"), and John Doe, an unknown Consol employee. [Record No. 1-1, pp. 11-20] The Complaint alleged that the unmarked utility line was constructed and owned by the power company and Consol. *Id.* at 13. In a Third Party Complaint, the power company and Consol sought apportionment and contribution from Croddy. *Id.* at pp. 5-10. After Croddy removed the case to this Court, the United States substituted itself in place of Croddy. [Record Nos. 1 and 11]

The plaintiffs later amended their Complaint, adding Kentucky Fuel Corporation ("KFC") as a defendant. [Record No. 53] The plaintiffs allege that KFC also "constructed, and/or owned or leased" the utility line that caused the crash. *Id.* at 2. Thereafter, they amended the Complaint a second time to include the United States as a defendant. [Record No. 79]

The United States filed crossclaims against the power company, Consol, and KFC, alleging that all three entities were negligent in maintaining the utility line. [Record No. 94] The United States sought reimbursement for worker's compensation expenses it paid to Croddy. *Id.* It has now been established that KFC owned the utility line at the time of the accident, and all claims against the power company and Consol have been dismissed. [Record Nos. 144, 155, and 156] However, the United States' crossclaim against KFC remains pending. The plaintiffs' claims against the United States, KFC, and John Doe are pending as well.

## II.

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)  the testimony is based on sufficient facts or data;
>
> (c)  the testimony is the product of reliable principles and methods; and
>
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Rule reflects the Supreme Court's holding in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See* Fed. R. Evid. 702 advisory committee's note (2000 Amendments). In *Daubert*, the Court explained that Rule 702 is intended to provide a flexible framework for deciding whether expert testimony is sufficiently reliable for presentation to the jury. 509 U.S. at 594. *See also United States v. Jones*, 107 F.3d 1147, 1156 (6th Cir. 1997) (finding that the trial judge still serves an important gatekeeping role after *Daubert*, requiring him to determine whether evidence is not only relevant, but also reliable.). While trial court judges serve as evidentiary gatekeepers, rejection of expert testimony is the exception rather than the rule. *See* Fed. R. Evid. 702 advisory committee's note (2000 Amendments).

### III.

In its motion *in limine*, the United States seeks to prevent three of the proposed expert witnesses from testifying that Croddy caused the crash by operating the helicopter at an altitude below 500 feet. [Record No. 124]

A.   **Clyde Pittman**

The United States seeks to limit the expert testimony of Clyde Pittman, an electrical engineer retained by KFC.[1] [Record No. 124-1, pp. 4-5]  For a number of years, Pittman worked for the Federal Aviation Administration ("FAA"). [Record No. 124-2, p. 2]  In his report, Pittman primarily addresses: (i) whether KFC was required to notify the FAA that the utility line existed and (ii) whether the FAA regulations obligated KFC to mark the line so that it would be readily visible to air traffic.  [Record No. 124-3]  Pittman also briefly discusses the FAA regulation governing the minimum flying altitude for aircraft.  *Id.* at 7.  Pittman concludes that the FAA notice and marking requirements do not apply to the utility line.  *Id.* at 13.  Further, he states that, "had the pilot not descended below 500 ft above ground level as prescribed by FAR 91.119[,] the crash never would have happened." *Id.*

The United States does not seek to exclude Pittman's opinion regarding the FAA's notice and marking requirements.  Instead, it argues that Pittman is not qualified as an expert on proper helicopter operation.  [Record No. 124-1, p. 5]  Pittman is not a pilot. [Record No. 124-2, p. 3]  Further, during his time with the FAA, he did not investigate any airline crashes nor is he trained to do so.  *Id.* at 2.  He also testified during his deposition that his opinion regarding the case pertained strictly to the question of whether "the power line owners or companies [were obligated] to report this line area to the FAA[.]" *Id.* at 3.

The United States also criticizes Pittman for relying on the altitude and visibility findings from other reports instead of conducting his own independent investigation.

---

[1] Pittman's report states that it was prepared for Attorney Randy May. [Record No. 124-3, p. 2]  Randy May represents the power company and Consol, but Consol *and* KFC filed a joint response defending Pittman's expert report and opinion. [Record No. 130]  Because Consol and the power company have been dismissed, this opinion will refer to Pittman as KFC's proposed expert.

[Record No. 124-1, p. 5] However, the Court need not decide this particular point because Pittman's testimony establishes that he is not qualified to offer an expert opinion regarding the proper flying altitude for helicopters. KFC has failed to offer any contrary proof. In fact, the record does not contain any evidence showing that Pittman has experience or special knowledge regarding helicopter operations.

Moreover, Pittman's conclusion on this subject does not meet Rule 702's requirement that expert opinion "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The fact that the utility line was less than 500 feet above the ground is well-established by the evidence. Thus, a layperson could conclude, without an expert's assistance, that the helicopter would not have made contact with the utility line if Croddy had kept the helicopter above 500 feet. Any juror could easily reach that conclusion without "scientific, technical, or other specialized knowledge." *Id.* *See Ancho v. Pentek Corp.*, 157 F.3d 512, 517 (7th Cir. 1998) (An expert "must testify to something more than what is obvious to the layperson in order to be of any particular assistance to the jury.") (internal quotation marks and citation omitted). Therefore, the United States' motion will be granted insofar as it seeks to limit Pittman's testimony to his area of expertise, namely FAA notice and marking regulations.

### B. John Derald Morgan

The United States also seeks to limit the testimony of John Derald Morgan, an electrical engineer retained by the power company. [Record No. 124-1, pp. 6-7] The power company responded, objecting to the United States' motion. [Record No. 128] However, the power company is no longer a party. And because no other party has addressed the admissibility of Morgan's testimony, the United States' objections to Morgan's testimony

will be denied as moot. The United States may renew its motion if another party proposes to introduce Morgan's testimony during the upcoming trial.

### C. Gregory Feith

Finally, the United States' motion challenges the expert opinion of Gregory Feith, a former National Transportation Safety Board investigator retained by the plaintiffs. [Record No. 124-1, p. 7] However, the United States has since withdrawn its *in limine* request regarding Feith. [Record No. 142, p. 4] Accordingly, insofar as the motion seeks to limit Feith's proposed testimony, it will be denied as moot.

### IV.

For the foregoing reasons, it is hereby

**ORDERED** that the United States' motion *in limine* regarding *Daubert* issues [Record No. 124] is **GRANTED**, in part, and **DENIED**, in part, as explained more fully above.

This 21st day of April, 2016.



Signed By:
Danny C. Reeves  DCR
United States District Judge