UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| ERWIN EDWARD EISERMAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 14-444-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KENTUCKY FUEL CORPORATION, et al., | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Kentucky Fuel Corporation's ("KFC") motion for summary judgment.[1]  [Record No. 123]  KFC argues that it did not have a duty to remedy the allegedly hazardous condition.  However, the evidence does not definitively support KFC's position.  As a result, its motion for summary judgment will be denied.

# I.

Around 10:15 a.m. on July 29, 2013, a helicopter, operated by Andrew Croddy, an agent of the United States Drug Enforcement Agency ("DEA"), departed from the London-Corbin, Kentucky airport.  [Record No. 132-3, pp. 2, 7; Record No. 132-4, pp. 1, 3; Record No. 123-5, p. 1; Record No. 79]  Plaintiff Erwin Eiserman, a Kentucky state trooper, was Croddy's passenger.  [Record Nos. 66, 79, 84, and 132-4, p. 7]  The purpose of the flight was "to direct a ground team of Kentucky State Police ("KSP") and Kentucky National Guard

---

[1]     The motion was filed jointly by Kentucky Fuel Corporation and Consol of Kentucky, Inc. [Record No. 123]  However, the Court has already dismissed Consol on the basis of a separate summary judgment motion.

("KYNG") personnel to areas of illegal marijuana cultivation."  [Record No. 132-3, p. 2]  At some point during the flight, the helicopter made contact with a utility line owned by KFC and located in a clearing in a remote area of Breathitt County, Kentucky.  [Record Nos. 79] Subsequently, the helicopter became entangled in two residential power lines, running below KFC's utility line.  [Record No. 132-3]  Eventually, the helicopter crashed and caught fire. *Id.* at 2.  Eiserman and Croddy escaped but sustained serious injuries.  *Id.*

On July 17, 2014, Eiserman and his wife[2] filed a Complaint in Breathitt Circuit Court, seeking compensatory and punitive damages from Kentucky Power Company ("the power company"), Consol of Kentucky, Inc. ("Consol"), and John Doe, an unknown Consol employee.  [Record No. 1-1, pp. 11-20]  The Complaint alleged that the unmarked utility line was constructed and owned by the power company and Consol.  *Id.* at 13.  In a Third Party Complaint, the power company and Consol sought apportionment and contribution from Croddy.  *Id.* at pp. 5-10.  After Croddy removed the case to this Court, the United States substituted itself for Croddy.  [Record Nos. 1 and 11]

Subsequently, the plaintiffs amended their Complaint, adding KFC as a defendant. [Record No. 53]   The plaintiffs allege that KFC also "constructed, and/or owned or leased" the utility line that caused the crash.  *Id.* at 2.  Later, they amended the Complaint a second time to include the United States as a defendant.  [Record No. 79]

The United States filed crossclaims against the power company, Consol, and KFC, alleging that all three entities were negligent in maintaining the utility line.  [Record No. 94]

---

[2]     Eiserman's wife, Barbara Eiserman, seeks to recover compensatory and punitive damages for loss of consortium.  [Record Nos. 1-1, 53, and 79]  Additionally, the Eisermans brought loss of consortium claims on behalf of their two minor children.  *Id.*  However, the Court dismissed the children's claims based on the plaintiffs' stipulation that the claims were barred under Kentucky law.  [Record Nos. 152 and 153]

The United States sought reimbursement for worker's compensation expenses it paid to Croddy. *Id.* It has now been established that KFC owned the utility line at the time of the accident, and all claims against the power company and Consol have been dismissed. [Record Nos. 144, 155, and 156]  But the United States' crossclaim against KFC remains pending.  The plaintiffs' claims against the United States, KFC, and John Doe also remain. KFC seeks summary judgment on all claims against it.  [Record No. 123]

## II.

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists when there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  *See Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).  In deciding whether to grant a motion for summary judgment, the Court must view all the facts and draw all inferences from the evidence in a light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

The plaintiffs and the United States claim that KFC acted negligently when it failed to mark the utility line for the purpose of making it visible to air traffic.  KFC argues that it is entitled to summary judgment because it had no duty to mark the line.  "To recover under a claim of negligence in Kentucky, a plaintiff must establish that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached its duty, and (3) the breach proximately

caused the plaintiff's damages." *Lee v. Farmer's Rural Elective Coop. Corp.*, 245 S.W.3d 209, 211-12 (Ky. Ct. App. 2007) (citing *Mullins v. Commonwealth Life Ins. Co.,* 839 S.W.2d 245, 247 (Ky.1992)).  In Kentucky, the question of duty is a question of law for the Court, not the jury, to decide.  *Shelton v. Ky. Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 912 (Ky. 2013).  Under Kentucky's "universal duty of care" doctrine, "'every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury.'" *James v. Meow Media, Inc.*, 300 F.3d 683, 690 (6th Cir. 2002) (quoting *Grayson Fraternal Order of Eagles v. Claywell*, 736 S.W.2d 328, 332 (Ky. 1987), *superseded by statute*, Ky. Rev. Stat. § 413.241).  However, the *James* Court emphasized that even the "universal duty of care" is "circumstantially limited: the duty is to exercise ordinary care to prevent *foreseeable* harm." *Id*.

The plaintiffs and KFC debate whether federal FAA regulations imposed a duty on KFC.  Regardless of the FAA regulations, the plaintiffs and the government contend that KFC had a common law duty to mark the utility line under *Lee*, 245 S.W.3d 209.  KFC disagrees, asserting that *Lee* is distinguishable.

### A.      Statutory Duty to Mark the Utility Line

To support their argument that KFC had a statutory duty to mark the line, the plaintiffs point to two advisory circulars published by the FAA.  [Record No. 134, pp. 9-10] According to Advisory Circular 70/7460-1F, published in 1978,

> [w]hen any object or portion thereof, either temporary or permanent, exceeds a height of 200 feet (61m) above site level or any standard for determining obstructions set forth in Section 77.13 or Subpart C of Part 77 of the Federal Aviation Regulations (14 CFR 77), that object should be marked and lighted exactly in accordance with the applicable standard described herein . . . .

[Record No. 134-1, p. 4]  Advisory Circular 70/7460-2J, published in 1995, requires that the FAA be notified of any construction or alteration of an object that is more than 200 feet above ground level.  [Record No. 134-2, p. 2]  Notably, both of these advisory circulars have been cancelled by more recent FAA advisory opinions.  *See* FAA Advisory Circular 70/7460-1G (1985), p. i (cancelling Advisory Circular 70/7460-1F); FAA Advisory Circular 70/7460-2K (2000), p. 1 (cancelling Advisory Circular 70/7460-2J).  Advisory Circular 70/7460-1L, referenced by KFC, appears to be the most recent circular regarding marking and lighting requirements for air traffic obstructions.  [Record No. 123-10]  According to Advisory Circular 70/7460-1L,

> [a]ny temporary or permanent structure, including all appurtenances, that exceeds an overall height of 200 feet (61 m) above ground level (AGL) or exceeds any obstruction standard contained in 14 CFR Part 77 should be marked and/or lighted.  However, an FAA aeronautical study may reveal that the absence of marking and/or lighting will not impair aviation safety. . . . The FAA may also recommend marking and/or lighting a structure that does not exceed 200 (61 m) feet AGL or 14 CFR Part 77 standards because of its particular location. . . .

FAA Advisory Circular 70/7460-1L (2015), p. 2-1.

The parties agree that the poles supporting the utility line at issue were thirty to forty feet above ground level.  [Record No. 134, p. 3; Record No. 124-3, p. 3]  The poles were situated on two different mountain tops, and the utility line they held sagged down into the valley between the mountains.  [Record No. 134, pp. 3-4; Record No. 124-3, p. 4]  The plaintiffs and KFC also agree that the utility line was approximately 300-350 feet above ground level at the accident site.  [Record No. 123-1, p. 3; Record No. 134, p. 3]  Because the line was more than 200 feet above the ground at the accident site, the plaintiffs argue that the advisory circulars required KFC to mark the utility line.  [Record No. 134, p. 9]

- 5 -

KFC counters that advisory circulars are just that – advisory. [Record No. 123-1, p. 5] For support, it relies on Advisory Circular 70/7460-1L, which states, "[t]his AC does not constitute a regulation and, in general, is not mandatory." FAA Advisory Circular 7460-1L (2015), p. ii. Nevertheless, Title 14 of the Code of Regulations, Part 77, requires that construction of or alteration to certain structures be reported to the FAA. Advisory Circular 70/7460-1L explains that the FAA *may* determine that its lighting and marking requirements are mandatory for those structures that fall under Part 77's notice requirements. *Id.*

Under 14 C.F.R. § 77.9, notification is required for "any construction or alteration that is more than 200 ft. AGL [above ground level] at its site." 14 C.F.R. § 77.9(a). Because the utility line was higher than 200 feet at the accident site, the plaintiffs assert that the marking and lighting requirements were mandatory. [Record No. 134, p. 8] According to the plaintiffs, KFC's proposed expert (Clyde Pittman) admitted in his deposition that KFC was required to give the FAA notice regarding the utility line. [Record No. 134, p. 11] First, the plaintiffs have failed to produce any portion of Pittman's deposition, and the portion to which they cite is not in the record.[3, 4] Second, even though the plaintiffs and KFC have retained experts to interpret the relevant FAA regulations, expert testimony that expresses a

---

[3]      The plaintiffs cite to pages 22, 23, 158, and 159 of Pittman's deposition [Record No. 134, p. 11 n.12], but only pages 142 to 149 are currently filed in the record. [Record No. 124-2] Pittman does not admit in those pages that notice to the FAA was required.

[4]      While the Court is required to draw all inferences from the evidence in a light most favorable to the plaintiffs, *Matsushita*, 475 at 587, the Court cannot weigh evidence that is not properly before it. *See Connor-Clement v. Trinity Indus., Inc.*, 3:07-cv-1154, 2009 WL 211141, at *7 (M.D. Tenn. Jan. 28, 2009) (On a motion for summary judgment, the court refused to consider deposition testimony cited by the plaintiff but not filed in the record.); *715 Spencer Corp. v. City Envtl. Servs., Inc.*, 80 F. Supp. 2d 755, 760 n.3 (N.D. Ohio Aug. 4, 1999) ("Since the portions of Conley's deposition cited by [the non-movant] are not in the record, the Court cannot consider that allegation.").

legal conclusion is inadmissible.  *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994).  Interpretation of a federal regulation constitutes a legal, not a factual, analysis.  *See Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994) ("The meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts.  It is question of law, to be resolved by the court."); *Wildearth Guardians v. Public Serv. Co. of Colo.*, 853 F. Supp. 2d 1086, 1090 (D. Colo. 2012) ("[The expert's report] includes a complex discussion of what he considers to be relevant regulations and his interpretation of them.  However, simply put, an expert may not tell the Court what the law is."); *Langenbau v. Med-trans Corp.*, No. C13-3038-LTS, 2016 WL 943765, at *15 (N.D. Iowa Mar. 8, 2016) ("[E]xperts may *refer* to regulations in addition to their industry experience, but they cannot properly testify as to whether a regulation was violated.") (internal quotation marks and citation omitted); *Klaczak v. Consol. Med. Transp. Inc.*, No. 96 C 6502, 2005 WL 1564981, at *9 (N.D. Ill. May 26, 2005) (While the expert's opinion regarding whether the defendants violated various federal regulations "may be the proper subject of a brief or perhaps a closing argument, it is not the proper subject of an expert opinion.")  Accordingly, the question of whether KFC violated any FAA regulations is a question for this Court to decide, and the expert opinions offered by both parties are not dispositive.

KFC does not at all address the applicability of § 77.9's notice requirements.  Instead, it asserts that the utility line did not qualify as an obstruction to air navigation under 14 C.F.R. § 77.17 because the line was less than 499 feet above ground level.  [Record No. 123-1, p. 5]  Regardless, § 77.9 still required KFC to notify the FAA that the line was over 200 feet above ground level.  Then, the FAA would have determined what marking and lighting,

if any, were required.  The plaintiffs have not established that KFC had an absolute duty to mark the utility line at issue.  As discussed above, the most current advisory circular to address the subject simply states that the marking requirements contained therein *may* become mandatory if notice to the FAA is required.  *See* Advisory Circular 70/7460-1L (2015), p. ii.  Nevertheless, the plaintiffs have shown that KFC should have reported the utility line to the FAA and allowed the FAA to determine whether marking was appropriate.  That fact weighs against KFC in determining whether it had a common law duty to mark the utility line.

### B.        Common Law Duty to Mark the Line

Both the plaintiffs and the United States contend that KFC had a common law duty to mark the utility line.  [Record Nos. 134 and 136]  For support, they rely on *Lee*, 245 S.W.3d 209.  In *Lee*, a plane crashed into an unmarked utility line stretched over a recreational lake. *Id.* at 211.  Even though the parties agreed that the defendant utility company had no statutory duty to mark the power line, the Kentucky Court of Appeals still found that the utility had a common law duty to mark the line.  *Id.* at 213, 218.  According to the appellate court, "a utility has a duty to mark a line that it reasonably knows will create a hazard . . . ." *Id.* at 218.  Specifically, the court found that a duty existed because: (i) the line at issue crossed a body of water; (ii) the line was not visible over the water; (iii) the line's supporting structures were obscured; and (iv) the defendant was on notice that the same line had been hit on a prior occasion.  *Id.*

KFC claims that *Lee* is distinguishable.  The parties agree that the utility line in this case did not cross a body of water.  However, the record does indicate that KFC's utility line was difficult to see.  The plaintiffs and the United States assert that initially, three lines

carrying electricity ran parallel to the line at issue, a steel cable called a static line that did not carry electricity.  [Record No. 134, p. 5, Record No. 136, pp. 1-2]  Electricity was eventually cut off to the three electrified lines, and at some point prior to the accident, they all fell to the ground, leaving only the static line.  KFC does not contest any of these facts.

Undoubtedly, a single steel cable would be more difficult to see than four parallel lines.  KFC argues that Croddy should have seen the remaining static line because Eiserman pointed it out prior to the accident.  [Record No. 141, p. 4]  KFC provides no citation to the record to support this argument.  Darryl Conway, the investigator who prepared the DEA's accident report, interviewed Croddy and Eiserman about the accident.  [Record No. 132-3]  Eiserman stated that he spotted the set of residential power lines below the static line before they crashed.  *Id.* at 9.  Croddy also told Conway that Eiserman warned him about the lower lines.  *Id.* at 8.  However, Eiserman specifically stated that neither he nor Croddy saw the single high wire.  *Id.* at 9.  Like *Lee,* this factor weighs against KFC.  If the utility line was difficult to see, it was foreseeable that a low flying helicopter might crash into it.

Unlike *Lee*, the parties in this case have not shown whether the utility line's supporting structures were clearly visible or concealed from view at the time of the accident.  Gregory Feith, the accident reconstruction expert hired by the plaintiffs, personally performed an aerial survey of the area sometime after the accident.  [Record No. 132-1, p. 12]  According to his report, the supporting structures "had been concealed by vegetation growth."  *Id.*  However, he also opined that, "had [] Croddy conducted a 'scouting' flight at an altitude that was above the ridgelines (that define the Big Lovely valley) he could have identified the pole structures."  *Id.*  The United States contends that photographs show that the poles were concealed by vegetation.  [Record No. 136, p. 2]  But the government did not

include any photographs with its response, and the Court has not found any such photographs in the record.

KFC also argues that unlike the utility company in *Lee*, it had no notice of any prior accidents involving that portion of the line. [Record No. 123-1, p. 6] The plaintiffs disagree, stating that a helicopter struck one of KFC's transmission lines five years before the accident. [Record No. 134, p. 15] In support, the plaintiffs cite to the power company's responses to discovery requests. *Id.* at p. 15 n.40. But again, the plaintiffs have not filed those responses in the record. Additionally, the plaintiffs admit that "[t]here is no evidence of record as to whether . . . KFC ever knew about this wire strike." *Id.*

The plaintiffs further contend that like the recreational lake in *Lee*, the area where the accident occurred was a popular spot for helicopters. *Id.* at 14. According to the plaintiffs, "rural Breathitt County is an area where the Marijuana Suppression Team frequently operated helicopters." *Id.* The United States also alleged that, "[t]estimony at trial will reveal that this area is frequently monitored (during the grow season) by National Guard helicopters looking for marijuana crops." [Record No. 136, p. 2] However, neither the plaintiffs nor the government cite to any part of the record to support these assertions. Accordingly, this factor also weighs in KFC's favor. If KFC was unaware of any prior accidents, it was less foreseeable that this accident would occur. But the absence of prior accidents, by itself, is not dispositive. *See Lee,* 245 S.W.3d at 215 ("'[I]t would be a tragedy . . . to say utility companies in this situation get one 'free bite' before their duty to act against an unreasonable, foreseeable risk would arise.'" (quoting *Hosto v. Union Elec. Co.*, 51 S.W.3d 133, 140 (Mo. Ct. App. 2001)).

KFC also claims that it could not have foreseen that Croddy would fly below 500 feet. However, the FAA regulation cited by KFC states that an aircraft may fly below 500 feet in sparsely populated areas, so long as it remains at least 500 feet from any person, vessel, vehicle, or structure.  14 C.F.R. § 91.119(c).  A helicopter may be operated even lower than that "if the operation is conducted without hazard to persons or property on the surface."  14 C.F.R. § 91.119(d)(1).  In *Lee*, 245 S.W.3d at 215-16, the utility company claimed that the pilot unforeseeably violated § 91.119(c).  However, the court determined that the claim was "at best, premature."  *Id.* at 216.  The facts, or lack thereof, in this case warrant the same conclusion.  The record at this point does not establish beyond dispute that Croddy violated § 91.119.

> Under Rule 56 of the Federal Rules of Civil Procedure,
>
> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Many of the depositions and other documents cited by the non-movants has not been filed in the record as Rule 56 requires.  Thus, the Court is unable to weigh those documents.  However, considering the evidence that *is* in the record in a light most favorable to the United States and the plaintiffs, the Court finds that KFC has not met its burden.  KFC has not shown that the line was exempt from the FAA's notification requirements.  The opinion of KFC's proposed expert on that issue is not sufficient.  If KFC

- 11 -

would have complied with the FAA's notice requirements, the FAA might have required it to mark the line.  Even though the FAA regulations did not expressly require KFC to mark the line, it was still reasonably foreseeable that a single unmarked steel cable suspended 300-350 feet above ground and running between two mountaintops would create a hazard to air traffic.  However, like the Court in *Lee*, 245 S.W.3d at 218, the undersigned "reach[es] no decision regarding whether this failure [to mark the line] was negligent, as that question is more properly left for the trier of fact."

## IV.

For the foregoing reasons, it is hereby **ORDERED** that Defendant Kentucky Fuel Corporation's motion for summary judgment [Record No. 123] is **DENIED**.

This 29th day of April, 2016.

Signed By:

*Danny C. Reeves* DCR

United States District Judge